(80 South. 824)

KNIGHT et al. v. O'BRIEN et al.
(5 Div. 713, 713a.)

(Supreme Court of Alabama.   Dec. 19, 1918.
Rehearing Denied Feb. 13, 1919.)

1. WILLS ⬥470—CONSTRUCTION—INTENT OF TESTATOR.

It being the lawful intent of the testator that is to be sought and effected, in construing a will the whole instrument is to be considered.

2. WILLS ⬥495 — CONSTRUCTION — "CHILDREN."

Unless testator manifests in will intention to employ term "children" to different effect, term is accorded significance of a word of purchase, not of limitation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Children.]

3. WILLS ⬥607(1) — CONSTRUCTION — "AND THEIR CHILDREN."

Under a will reading, "I give and devise to my two sons W. and T. and their children an undivided one-half interest each, * * * and I also devise, to my two said sons all stock," etc., "kept and used on the premises above bequeathed to them," the phrase "and their children" was employed to define a limitation on the estate, and not to designate those whom testator designed to take in præsenti under that devise, the two sons taking fee-tail estates, which Code 1907, § 3397, converted into a fee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Their Children.]

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Action between W. H. Knight and others and W. D. O'Brien and others. From a decree in favor of the latter, the former appeal. Reversed and remanded.

D. W. Crawford and J. Percy Oliver, both of Dadeville, George A. Sorrell, of Alexander City, and Barnes & Walker, of Opelika, for appellants.

───────────────────────────────────────────
⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

James W. Strother, of Dadeville, and N. D. Denson, of Opelika, for appellees.

McCLELLAN, J. The determining inquiry presented by this appeal is the proper construction of item 1 of the will of William B. O'Brien, who died May 6, 1904. His will was executed on the 4th of November, 1903, approximately six months before his death.

[1] It is the lawful intent of the testator that is to be sought and effected in the judicial process of construing a will; and the whole testamentary instrument is to be considered in ascertaining that intent. Denson v. Mitchell, 26 Ala. 360, 369; 12 Mich. Dig. Ala. Rep. p. 1019; 40 Cyc. pp. 1413–1416.

The testator left a widow, Anna E. O'Brien, two sons, William D. O'Brien and Thomas B. O'Brien, and a daughter, Bessie Kate Greer. Thomas B. O'Brien, the son, was never married. He died childless on May, 14, 1905. At the time testator died, William D., his son, was married and had six children. After testator's death five children were born to W. D. O'Brien.

The controversy arises over the different effects which diverse interests would attribute to the words "and their children" in first item, reading:

"I give and devise to my two sons, William D. O'Brien and Thomas B. O'Brien *and their children* an undivided one-half interest each in fourteen hundred acres of land, described as follows. * * * And I also devise to my two said sons, all stock, including mules, horses and cattle and farming implements of all kinds kept and used on the premises *above bequeathed to them*." (Italics supplied.)

[2, 3] Unless a testator manifests in his will an intent to employ the term "children" to a different effect, the term is accorded the significance of a word of purchase, not of limitation. Wallace v. Hodges, 160 Ala. 278, 280, 49 South. 312, and Echols v. Jordan, 39 Ala. 24, among others. Applicable precedents, illustrating principles long accepted, as well as appropriate recourse to other illuminating expressions in the will, require the conclusion that this testator did not intend that the phrase "and their children" in the first item of his will should be accorded the effect to vest in præsenti in children of his named sons any interest in the lands thereby devised. The phrase was employed to define a limitation on the estate, and not to designate those whom he designed to take in præsenti under that devise. The grounds for this conclusion may be briefly stated.

Unmistakably the testator regarded with equal favor the natural claims of his two named sons to his bounty. This equality, as between the sons, he expressed positively in the provision for an "undivided one-half interest each" in the land devised. The definition of division into moieties refutes the entertainment by the testator of any intent, whatever the effect to be accorded to the phrase "and their children," to provide for a sharing in the whole devise, based upon the number of children one or both of the "two said sons" had or would have. It is equally manifest—necessarily consequent upon the premise stated—that the testator did not intend the bestowal upon his son William D., who then had several children, a different quality of interest or estate in the 1,400 acres from that he purposed to devise to his son Thomas B., who was at all times childless. Recourse to the established doctrine to be now stated will serve to point the consequence, as between the two named sons, of the term "children" should be accorded the effect of a word of purchase. In Vanzant v. Morris, 25 Ala. 285, a deliverance often since accepted as conclusive authority on the proposition to be quoted, it was held:

"* * * A bequest to A. and his children, if A. has no children either at the time the will was made or when it takes effect by the death of the testator, never has been held to create any interest in after-born children as purchasers."

The reason underlying this rule (to be presently quoted) compels its acceptance with respect to a devisee who, neither at the date of the will nor at the date of the death of the testator, had any children. The court then proceeds approvingly to reproduce the pertinent statement of Wilde's Case, 6 Coke's Rep. 17a, as follows:

"* * * If 'A. devises his lands to B. and to his children or issues, and he hath not any issue at the time of his devise, that the same is an estate tail; for the intent of the devisor is manifest and certain that his children or issue should take, and as immediate devisees they cannot take, because they are not in rerum natura, and by way of remainder they cannot take, for that was not his intent, for the gift is immediate; therefore there such words shall be taken as words of limitation, namely, as much as children or issue of his body.'"

This doctrine found acceptable in Vanzant v. Morris has been recognized and applied in this court up to the recent deliverance in Shuttle v. Barker, 178 Ala. 366, 372, 373, 60 South. 157. The texts in 2 Jarman on Wills (6th Ed.) p. 385, and 2 Alexander on Wills, pp. 1338, 1339, are to the same effect. The result of the application of this settled doctrine would be to impute an effect that the testator never intended: an intent that would immediately contradict the equality with which the testator purposed to bestow his bounty on his two sons in the first item of his will. To observe and enforce the distinction that would attend this doctrine's application here would result in a devise to Thomas B. of the absolute fee to an undivided half interest and a different and less estate to William D., who had six children; a

process that would oppose the obvious purpose of the testator.

The stated construction of the devise in the first item is further confirmed by other features and expressions . in the instrument. The bequest of the stock, etc., in the first item, is closed with a distinct manifestation of intent to bequeath the stock, etc., to the same persons to whom the devise passed the full title to the land thereinabove described, viz. "my two said sons," the particular reference being to "them"; and that is coupled with the allusion, by way of addition, imported by the word "also" in the first sentence in the clause making the bequest. Again, in the third item, touching other properties, the testator emphasizes his dominating purpose to primarily as well as ultimately impartially favor his two sons and his daughter as devisees and legatees; and, in the event of the death of any one or more of them, then, secondarily, that their respective "descendants" should take their respective portions. Again, in the (second) fourth item the testator undertook to provide for the maintenance and support of his three sisters, and in the fifth item he provided a source for the funds to pay debts, and also wherefrom these ladies might be sustained. In this item he wrote:

"In order to fully carry out the provisions of the fourth item of this will for the support of my said sisters or such of them as may need the same, also the provision of this will as to the payment of all debts due by me at my death, I hereby authorize and empower my said executrix during her life or widowhood, to demand of and receive from my said three children, or their descendants in case any of said children should die, such reasonable rent for the use of the property herein bequeathed to said children, as may be necessary to fully and completely carry out said provisions of this will."

It appears with satisfactory certainty that "my said three children" should be the contributors, through reasonable rentals, to the fund he had in mind. It was only in the contingency that one or more of the "three children" should die that their "descendants" should be required to contribute; and in defining the subject of such rentals he refers to the property "herein bequeathed to said children," excluding by this reference the notion that he had given any interest in the property to any of his grandchildren. If the terms of the devise to the two sons had been less definite, the personal charge laid on them and their sister by the quoted provisions of the fifth item would suggest, at least arguendo, recourse to the rule which deduces an intent to devise an estate in fee .where a personal charge is imposed on the devisee. McRee v. Means, 34 Ala. 349, 377.

According appropriate effect to the first item, the two sons named therein took fee-tail estates in undivided half interests in the 1,400 acres, which the statute (Code, § 3397) converted into a fee. A different construction was accepted in the court below. Its decree is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.