7 So.2d 276

**STANLEY v. BECK.**

**7 Div. 688.**

Supreme Court of Alabama.

March 19, 1942.

Rehearing Denied April 16, 1942.

Scott & Dawson, of Fort Payne, and Rains & Rains, of Gadsden, for appellee.

Reed & Reed, of Center, and A. E. Hawkins, of Fort Payne, for appellant.

FOSTER, Justice.

This is an appeal from the final settlement of an administration had in equity.

There was no reference to the register and no report from a master upon the status of the accounts of the administrator. The presiding judge heard much of the testimony from the witnesses in open court, and some of it was taken before a commissioner.

We said in Alexander v. Hicks, ante, p. 243, ·5 So.2d 781, that equity procedure has wisely provided for a reference where the register may see and hear the witnesses, state an account disclosing his findings on the several issues. Provision is made for exceptions to his report. The entire procedure is set out in the Code of 1940, Title 7, Equity Rules 79–88, pages 1108 to 1113.

We have held that a presiding judge in a court of equity is not bound to order a reference, and he may proceed without one. Hale v. Cox, 240 Ala. 622, 200 So. 772. In that case a reference was made which greatly aided this Court in reviewing the final decree.

But when there is no reference, and the presiding judge acts in the capacity of a master his findings and decree should be reviewed by us on appeal on the same theories which obtain when he reviews the report of the register. The general principle obtains that his findings, when the evidence to a material degree was taken before him in open court, will be treated as in other such cases on review by appeal to us. Cone v. Barganier, 218 Ala. 292 (12), 118 So. 342. The assignments of error will be treated as exceptions to the register's report. Rule 87, supra. There is no rule which requires assignments of error to note the evidence relied on as in that rule. But rule 10 of Supreme Court practice, Code of 1940, Title 7, page 1008, provides that counsel for appellant in their brief shall, if the question is on the sufficiency of the evidence, make a condensed recital of the evidence in narrative form so as to present the substance clearly and concisely, which shall be taken as accurate and sufficient for decision by this Court, unless

the opposing party in his brief makes corrections and additions. And in rule 11, that the brief for appellee shall point out any omission or inaccuracies in appellant's statement. It was said in New York Life Insurance Co. v. Mason, 236 Ala. 44 (7), 180 So. 775, that the purpose of those rules was to enable the Court to determine from the briefs of counsel whether there was error in the trial court, without making it necessary to explore the entire record. This has been as it should be specifically applied to reviewing on appeal a decree on a register's report. Cone v. Barganier, 218 Ala. 292, 118 So. 342 (10).

The record in this case is such that we will apply those rules to a consideration of this appeal.

### Assignments 1, 2, and 3.

These assignments take the point that the administrator made no proof of his accounts, other than by the vouchers, insisting the law is not thus satisfied. Title 61, section 302, Code of 1940, requires the administrator to produce proof of each item on the credit side of the account. Appellant in support of these assignments refers to page 114 of the record. There is shown a colloquy between the court and counsel, in which the court stated that he would take the vouchers as satisfactory proof of the items unless they are contested. No one raised any objection to this procedure. The rule seems to be settled that the court would be at liberty to arrive at the conclusion that certain vouchers constituted satisfactory proof. McCreeliss' Distributees v. Hinkle, 17 Ala. 459; 24 Corpus Juris 1021, section 2476.

The nature of the proof to be satisfactory is not stated in the statute. Moreover, appellant does not in those assignments point out any specific item of credit as not being satisfactorily proven.

### Assignment No. 4—John E. Mitchell rent.

This party rented a warehouse from the administrator and agreed to pay $25 a month for a year. He has only paid $50. The trial court decreed that this balance was an asset of the estate, and should be collected by the administrator de bonis non, and not chargeable to the outgoing administrator. There is no evidence cited or reason assigned to show liability for not collecting the balance of $250.00, or that the trial court erred in this respect.

### Assignment No. 5, Quinn notes.

The decedent held two notes of long standing against this party. The administrator collected them by allowing a discount of $112. There was evidence that this appellant agreed to the allowance, and that decedent before he died agreed to an indefinite allowance. There is no evidence noted by appellant which conflicts with this. The court so found and disallowed the charge. No error here appears.

### Assignment No. 6, Beck notes.

This is the administrator himself and he charges himself with $395.56 as a balance due decedent on some notes for borrowed money of about $900. Appellant sought to charge him with the balance up to $900. The trial court made no special finding, but from the briefs we infer that this balance claimed was not charged to the administrator. The administrator did not deny, but admitted, getting the money from decedent in his lifetime, and offered much proof of payments made and credits on the debt. Appellant cites no evidence in conflict, but only evidence of the original debt which is not denied. On this status we cannot reverse the trial court.

### Assignment No. 7, DeKalb County warrants

Appellant in brief complains that the administrator collected $1,000, and had the use of it two years before he charged it to himself on his account, and also, that he should have collected interest on the warrants from the county. But the evidence shows that the county was not acquitted of interest, and the probate judge agreed to pay it. This can be collected by the new administrator, if collectible.

The evidence cited by appellee shows that $250 was deposited to the credit of the estate in the bank, and $750 applied to attorneys of appellee, and entered into the aggregate amount, which will be later discussed. The evidence cited by appellant does not overturn that cited by appellee. The trial court made no special finding. No reversible error is here shown.

### Assignment No. 8: Attorneys' fee for collecting Harper notes, $100 charge claimed.

The trial court made the following finding: "That the compromise by the said administrator of the claim or claims against

578

the bankrupt Harper of litigated or disputed demands or lien and the attorneys fee charged in connection therewith are proper and should be approved, there being no showing of negligence or bad faith on the part of the administrator as to the amount raised thereon, as shown by his final settlement as last amended, nor is there any showing of loss to the estate by virtue of the acts of the administrator in making such compromise of such disputed or litigated claims." This finding is fully supported by the evidence cited by counsel and stated in briefs.

Assignments 9, 10, 11, 12, 13, 14, 14-A, 15, 16, 17, 18, 19, 20, 58 and 59.

These assignments are in the same status as most of those to which we have referred. We have examined the references to evidence made in the briefs on both sides and find nothing in it to justify a finding contrary to that of the trial court. But we think no good purpose would be subserved by a detailed analysis of each of them.

### Assignments 21 to 57.

These relate to items paid to appellee and to the law firm of which he was a member, and to other counsel which will be referred to. Appellee, the resigned administrator making this settlement, is a lawyer and a member of the law firm of Isbell and Beck. He and his firm had been attorney for decedent before his death. When he died, this appellant who was the sole heir of the estate agreed with appellee for the latter to become administrator of the estate, and for his commission as such, and fee as an attorney in that connection he was to receive the fixed sum of $2,000. Pursuant to that agreement, he became administrator of the estate, and was proceeding to perform those duties when certain parties propounded an alleged will for probate. Appellant contested the probation of the will, and on that contest was represented at first by Isbell and Beck, and by Scott and Dawson, as attorneys. From a decree for the proponent, the contestant who was this appellant appealed to this Court. The judgment was reversed. Stanley v. Sawyer, 237 Ala. 515, 187 So. 425. On the second trial, the judgment was for the contestant, and proponent appealed. That judgment was finally affirmed on rehearing. Id., 241 Ala. 39, 1 So.2d 21.

After that affirmance, this appellee resigned and the decree on settlement of his acts as administrator is the basis of this appeal. He was allowed credits on account of attorneys' fees paid his firm on the contest of $2,500, and the sum of $2,000 as previously agreed, making the aggregate sum of $4,500, paid him and his law firm. A like sum of $2,500 was paid to Scott and Dawson, and later Rains and Rains, another firm of lawyers, were employed to represent contestant, and they were paid $1,500, which was also allowed by the Court.

There are separate assignments of error in respect to each of those allowances. But they are all controlled by the same principles of law and conclusions of fact. The trial court made the following finding as to those matters: "That the attorneys fees charged for services rendered to the estate after the death of the said J. F. Stanley, deceased, are large and heavy, and probably some of them are for duplicated services of attorneys, but the litigation in which this estate has been involved is extremely unusual, arduous and heavy and it was the duty of the administrator to protect such estate and to defend it on the part of the sole heir from a fraudulent, alleged last will and testament, which he has successfully done, thereby preserving the entire estate for the benefit of the sole heir and contestant; that the sole heir was naturally disturbed and uneasy over the ultimate outcome of such litigation and of the many and varied decisions of the lower and appellate courts, and advised with the administrator as to the employment of the numerous lawyers and their fees, and by his conduct participated in such employment and approved the same; and that the fees claimed for such services by the firms of Isbell and Beck, Scott and Dawson and Rains and Rains, are not unduly or illegally excessive and should be approved by the court and paid from the assets of the estate."

There was ample evidence to support that finding. Appellant admits much of it. He denies agreeing to pay Isbell and Beck $2,500 more than the amount first agreed on for appellee, but contends that he agreed to an additional sum of only $500. But the court found otherwise.

Appellant claims that such charges are not proper claims or allowances against the estate, but that the contest was personal and was a claim against him, if it was correct in amount. Appellant countersigned

one check to Rains and Rains, and agreed to their employment and aided in negotiating with them. He is the sole heir and distributee of the estate and the only person who prosecutes this appeal or now assigns errors. There is an administrator de bonis non, but he does not join in it, nor in the objections and exceptions to the administrator's statement of account on final settlement. So that as this controversy is presented, it is a contest of items which the court found were reasonable in amount and that this appellant as the sole person here interested in the objection to them participated in the employment of counsel and approved them, as constituting such items. The fees charged on the will contest by Isbell and Beck and Scott and Dawson were by contract contingent upon success in that respect. There was evidence that all of them were reasonable charges for the services rendered.

The principle of law is thus stated in that connection: "An administrator of an estate appointed on the assumption that the deceased died intestate cannot incur an attorneys' fee in resisting the probate of a writing propounded as the last will and testament of the decedent, and charge the same upon the estate even though he successfully contests the alleged will." 21 Amer.Jur. 691, section 550; 10 A.L.R. 801. But a different rule is elsewhere expressed. 68 Corpus Juris 1220, section 1080.

Section 59, Title 61, Code of 1940, provides that if the contest of a will is successful, the court may direct payment of the costs against either the plaintiff (that is, the proponent who lost) or out of the estate, or by them proportionately. And it has been held by this Court that if the administrator contests in good faith and loses the contest, the court may allow his costs out of the estate. Thomas v. Dumas, 30 Ala. 83. And in Mitchell v. Parker, 227 Ala. 676, 151 So. 842, that when a special administrator who was also named as the executor in a will propounds it for probate, acting in good faith, though he loses on a contest of it, the court may allow him his costs and attorneys' fee incurred in so doing.

While section 59, Code of 1940, supra, refers in terms to "costs", we think an allowance could, by analogy, be made in the judgment of the court to the administrator of such other expenses as were properly incurred in the successful contest. But whether so or not, when the sole heir and distributee is the contestant, and the expense is incurred or paid by the administrator at his request or with his consent or approval, he is in no position to object to its allowance. See, 24 Corpus Juris 100, section 534; Id. 1010, section 2455; compare Kennedy v. Davis, 171 Ala. 609, 55 So. 104, Ann.Cas. 1913B, 225.

Appellant in some of the assignments now under consideration also objects to certain items of expense, other than attorneys' fees, incurred in conducting the will contest and which were paid by the administrator and included in the credits allowed. These items are shown to have been reasonable and in furtherance of the prosecution of the contest. They include traveling expenses of the attorneys to various places, the payment of charges for expert services and other similar expenses. The propriety of their allowance is governed by the same considerations as apply to the charges for the services of the attorneys to which we have referred.

We find no reversible error in the decree, and it is affirmed.

Affirmed.

GARDNER, C. J., BOULDIN, and LIVINGSTON, JJ., concur.