This appeal is from a final settlement of the estate of Minnie H. Tillman. The estate was administered by Ruby H. Hart, who has appealed both as administratrix and individually. Hart challenges the trial court's determination that the decedent's estate and Hart each owned one-half of two joint bank accounts and that attorney fees from an earlier will contest concerning the estate were payable from the assets of the estate. We affirm.
Hart is Tillman's sole surviving sibling. Tillman executed a will in 1977 leaving the bulk of her estate to Hart. After Tillman's death, her other heirs at law, R. Milton Jackson and others, contested the 1977 will on the basis of lack of testamentary capacity, and they succeeded in a jury trial. This court affirmed the trial court's judgment. Hart v.Jackson, 510 So.2d 202 (Ala. 1987).
In this case the judgment of final settlement of the estate was entered after a hearing conducted by the trial court without a jury. Where evidence is presented to the trial courtore tenus, a presumption of correctness exists as to the court's findings on issues of fact; its judgment based on those findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Gastonv. Ames, 514 So.2d 877 (Ala. 1987); Cougar Mining Co.v. Mineral Land Mining Consultants, Inc., 392 So.2d 1177
(Ala. 1981). However, when the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court's judgment. Gaston, supra; Smith v.Style Advertising, Inc., 470 So.2d 1194 (Ala. 1985);League v. McDonald, 355 So.2d 695 (Ala. 1978).
 I. JOINT BANK ACCOUNTS
Hart first contends that she is entitled to the entire proceeds of the two bank accounts held jointly in the names of Hart and the decedent, Tillman, and that the trial court erred in determining that she is entitled to only one-half of those funds. Jackson does not challenge the trial court's decision to grant one-half of the funds to Hart but contends that Hart is entitled to no more than one-half.
Interests in joint bank accounts are determined according to the statute in effect at the creation of the account. Jonesv. Jones, 423 So.2d 205 (Ala. 1982). This Court has also held that Ala. Code 1975, § 35-4-7, the provisions of which have been in effect since 1852, governs ownership of funds held jointly in an account for which there is insufficient evidence of the date of creation. Ex Parte Lovett,450 So.2d 116 (Ala. 1984).
Carefully reviewing the record, we find insufficient evidence to show when the two bank accounts were created. Neither the bank nor Hart produced a signature card or other instrument of creation for either account. Moreover, neither of the accounts specifically referred to any survivorship rights. Therefore, the trial court properly applied § 35-4-7 to determine the ownership of these accounts.
Hart must comply with the requirements of § 35-4-7 to be entitled to the entire proceeds of the accounts as a joint tenant with right of survivorship. Section 35-4-7 reads as follows:
 "When one joint tenant dies before the severance, his interest does not survive to the other joint tenants but descends and vests as if his interest had been severed and ascertained; provided, that in the event it is stated in the instrument creating such tenancy that such tenancy is with right of survivorship or other words used therein showing such intention, then, upon the death of one *Page 163 
joint tenant, his interest shall pass to the surviving joint tenant or tenants according to the intent of such instrument. This shall include those instruments of conveyance in which the grantor conveys to himself and one or more other persons and in which instruments it clearly appears that the intent is to create such a survivorship between joint tenants as is herein contemplated."
(Emphasis added.)
Hart did not produce the instrument creating the bank accounts, and she produced no evidence that the instruments creating the accounts included a provision for joint tenancy "with right of survivorship." Hart relies on bank statements and checks that have both names on them and relies on what she says was the bank's policy regarding accounts. The bank statements and checks are silent as to survivorship. Hart's reliance on what she describes as the bank's policy of treating "or" accounts as joint accounts with right of survivorship is not germane to the question of ownership interests between the alleged owners of the accounts. The bank's right to make payments to the survivor of a joint account according to Ala. Code 1975, § 5-5A-41, exempts the bank from liability. It does not "empower the bank to determine ownership of a joint account in its depository. Rather, title is determined in accordance with the intentions of the parties, 'stated in the instrument creating such tenancy.' " Jones, 423 So.2d at 207 (quoting Ala. Code 1975, § 35-4-7).
Hart failed to prove that the instrument creating the account indicated an intent that the joint tenancy be with right of survivorship. See § 35-4-7. Therefore, the trial court properly refused to grant the entire proceeds of the accounts to Hart on a survivorship basis.
Hart contends that Ala. Code 1975, § 5-1-25, governs ownership rights as to the accounts. Section 5-1-25 creates a presumption of donative intent, which would grant full ownership of the funds of both accounts to Hart as the survivor. After thoroughly reviewing the record, we disagree with Hart's argument. Although Hart has produced some evidence that the accounts were created before 1970, there is no showing of the exact date of creation. If the accounts were created prior to 1970, they may have been created after 1958, when the predecessor to § 5-1-25 became effective; that statute or its predecessor was in effect from 1958 to 1980. They may also have been created during the period 1953 to 1958, while Ala. Code of 1940, Title 5, § 128(2a), was in effect. Because of the lack of evidence of the precise date of creation, the trial court properly applied § 35-4-7. ExParte Lovett, supra.
The trial court held that Hart was entitled to one-half of the funds in the joint accounts. The trial court had authority under § 35-4-7 to split the funds between Hart and Tillman's estate. See, e.g., Best v. First National Bank ofBirmingham, 494 So.2d 387, 388 at n. 2 (Ala. 1986) (construing § 35-4-7 to permit a division of the interests in certificates of deposit jointly owned by the decedent and the survivor); Briscoe v. Latta, 471 So.2d 405
(Ala. 1985) (partitioning ownership of certificates of deposit between the estate and the survivor as to "or" certificates);Parr v. Godwin, 463 So.2d 129, 134 (Ala. 1984) (Torbert, C.J., dissenting) (stating that "under § 35-4-7, a grant of personal property . . . creates in [the named owners] a tenancy in common with respect to such property unless . . . the instrument creating the estate . . . clearly indicate[s] that a joint tenancy with right of survivorship was intended"). Accordingly, we affirm the trial court's holding that the joint bank accounts were owned one-half by the estate and one-half by Hart.
 II. ATTORNEY FEES
Hart next argues that the trial court erred in awarding attorney fees to be paid from the estate to the attorneys who represented the will contestants. Attorney fees are recoverable under Alabama law as part of the costs of an action only where they are authorized by statute, where they are provided for in a contract, or where they can be awarded by special equity, such as a proceeding where the efforts of *Page 164 
an attorney create a fund out of which fees may be paid.Reynolds v. First Alabama Bank of Montgomery, N.A.,471 So.2d 1238 (Ala. 1985); Eagerton v. Williams,433 So.2d 436 (Ala. 1983); Shelby County Commission v.Smith, 372 So.2d 1092 (Ala. 1979).
The trial court expressly relied on Ala. Code 1975, §43-8-196, in awarding fees to the contestants' attorneys. This section provides in pertinent part:
 "The costs of any contest under the provisions of this article must be paid by the party contesting if he fails; otherwise, it [sic] must be paid by the plaintiff or out of the estate, or in such proportion by the plaintiff or out of the estate as the court may direct. . . ."
(Emphasis added.) Section 43-8-196 plainly authorizes the court to order that costs be paid out of the estate where, as here, the contestants did not fail.
Although the statute refers to "costs," this Court has construed that term to include attorney fees. Bleidt v.Kantor, 412 So.2d 769 (Ala. 1982) (interpreting the 1975 Code's predecessor to § 43-8-196); Clark v. Clark,287 Ala. 42, 247 So.2d 361 (1971) (construing the 1940 Code's predecessor to § 43-8-196). In Clark, this Court relied on what is now Ala. Code 1975, § 34-3-60, as a justification for holding that the word "costs" in the predecessor to § 43-8-196, included attorney fees.Id. Section 34-3-60 reads, in pertinent part, as follows:
 "In all actions and proceedings in the probate courts and circuit courts and other courts of like jurisdiction, where there is involved the administration of a trust [in Clark the Court held that an executor is a trustee, and that the executor's administration of the estate of a decedent is that of a trustee] . . . the court having jurisdiction of such action or proceeding may ascertain a reasonable attorney's fee, to be paid to the attorneys or solicitors representing the trust, joint or common property, or any party in the action or proceeding, and is authorized to tax as a part of the costs in such action or proceeding such reasonable attorney's fee, which is to be paid when collected as other costs in the proceeding to such attorneys or solicitors as may be directed or ordered by the court. . . ."
(Emphasis added.) Under this section, the trial court had the authority to tax attorney fees as a part of the costs in a case involving the administration of a trust or an estate. Because this case involves the administration of an estate, it follows that under the provisions of § 43-8-196, the trial court had authority to tax the attorney fees against the estate.
Section 43-8-196 requires that the contestant, in order to receive costs, including attorney fees, not fail in the contest of the will. This Court has upheld a trial court's award of costs to be paid out of an estate to the attorneys representing will contestants who settled the will contest. Harris v.Harris, 211 Ala. 144, 99 So. 913 (1924) (construing the 1907 Code's predecessor to § 43-8-196). In Stanley v.Beck, 242 Ala. 574, 579, 7 So.2d 276, 280 (1942), this Court noted that "if the contest of a will is successful, the court may direct payment of the costs against either the plaintiff (that is, the proponent who lost) or out of the estate, or by them proportionately."
Based on our previous interpretations of the language of § 43-8-196, the trial court had authority to award attorney fees to be paid out of the estate, because the will contestants were successful in this case.
The reasonableness of an attorney fee is largely within the discretion of the trial court. Peebles v. Miley,439 So.2d 137 (Ala. 1983); see Irons v. Le Sueur,487 So.2d 1352 (Ala. 1986); Mann v. Mann, 451 So.2d 783
(Ala. 1984). This discretion is an " 'advised, just, judicial and revisable discretion in the light of the whole record.'Dent v. Foy, 214 Ala. 243, 107 So. 210 (1925),Matthews v. Lytle, 220 Ala. 78, 124 So. 197 (1927)."Irons v. Le Sueur, supra, at 1359.
 " '[T]hough in reviewing the propriety of the fixation of such fees by the lower court, this court will be guided by its own judgment upon a consideration of the whole record, . . . we make such review with a presumption in favor of the ruling of the court below and will not set *Page 165 
aside its decree unless we are convinced that that court abused the discretion wisely vested in it.' "
Army Aviation Center Federal Credit Union v. Poston,460 So.2d 139, 141 (Ala. 1984), quoting King v. Keith,257 Ala. 463, 470, 60 So.2d 47, 52 (1952). (Citations omitted.)
In Peebles v. Miley, supra, we set out the following 12 criteria that the trial court should consider in setting attorney fees: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of the professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. See Van Schaack v. AmSouth Bank, N.A.,530 So.2d 740 (Ala. 1988); Irons v. Le Sueur, supra; see, also, Talb, Inc. v. Dot Dot Corp., 559 So.2d 1054
(Ala. 1990). Although not all of these criteria will be applicable in every case, they are available for the trial court to consider in connection with each claim for an award of attorney fees. Graddick v. First Farmers MerchantsNational Bank of Troy, 453 So.2d 1305 (Ala. 1984).
While we recognize that the reasonableness of an award of attorney fees is within the discretion of the trial court, subject to correction only for an abuse of discretion, we must be able to discern from the record what factors the trial court considered in determining the amount of attorney fees awarded.Van Schaack v. AmSouth Bank, supra; Lolley v.Citizens Bank, 494 So.2d 19 (Ala. 1986).
In its order awarding attorney fees, the trial court expressly referred to many of the Peebles factors:
 "The efforts of the attorneys for the contestants in this cause created a common pool of assets or funds shared by the heirs-at-law of Minnie H. Tillman. Under the circumstances of this case, it is proper that the cost of the contest, including the attorney fees of the attorneys for the contestants, be paid from the estate. It is particularly so in this case as not all of the group who share in this fund and these assets are clients of the attorneys for the contestants. Therefore, the Court finds it only right, fair, and just that the estate bear a portion of the burden of the fees for the contestants' attorneys. See Section 43-8-196, Code of Alabama
(1975).
 "The Court notes that the case from the contest, which was successful, to the present has been very complex and difficult for the attorneys and for contestants, and each success, and there have been several, was gained after litigation. . . . The common fund and value of assets created has been over a million dollars and none of the parties except Ruby H. Hart would have shared in the fund without the efforts of said attorneys. The court finds, and the record will reflect, that the attorneys for contestants in presenting the case for the contest, and in presenting the case for the appeal, and subsequent events have used many hours of time, required extraordinary skill and labor, certainly beyond an ordinary case, and, of course, involved the incurring of expenses. The Court finds that the attorneys for the contestants have much professional experience, have excellent reputations, and possess undisputed extraordinary abilities as attorneys.
 "The responsibility undertaken by the attorneys in making decisions and giving advice has been greater in this case than in the ordinary case, and the attorneys for the contestants took the case on a fee agreement whereby they would recover only upon achieving a victory (commonly called a contingent fee contract).
 A fee of FIFTY-NINE THOUSAND AND NO/100 DOLLARS ($59,000) would be a fair and reasonable contribution to *Page 166 
be paid to attorneys for contestants from the common fund for contesting the will of Minnie H. Tillman and creating the pool of assets and money to be shared by the heirs-at-law of Minnie H. Tillman, this being in addition to other fees owed them by contestants, their clients. . . ."
The trial court clearly had the statutory authority to award attorney fees to be paid out of the estate, and, considering the factors discussed by the trial court, we find no abuse of discretion in its determination of the amount of attorney fees. Accordingly, the judgment is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.